IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

KEYON HICKS,

    Petitioner,

v.                                           CASE NO. 4:08-cv-00256-SPM-GRJ

WALTER A. MCNEIL,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

This case is before the Court on Doc. 11, Petitioner's *pro se* Amended Petition ("Petition") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Petition stems from Petitioner's Leon County jury conviction of tampering with a witness, for which he received a total sentence of 10 years imprisonment as a habitual violent felony offender. Petitioner raises two claims in his Petition. First, Petitioner contends that trial counsel rendered constitutionally ineffective assistance for failing to call an alibi witness or failing to present an alibi witness's affidavit. Doc. 11. Second, Petitioner contends that the State court failed to apply *Strickland* when denying Petitioner's motion for postconviction relief. *Id.* Respondent filed a Response and Appendix with relevant portions of the state-court record, and Petitioner filed a Reply to the Response. Docs. 19 & 24. Upon due consideration of the Petition, the Response, and the state-court record, the undersigned recommends that the Petition be denied.[1]

---

[1]Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

## **State-Court Proceedings**

As set forth in the state-court record, the facts adduced at Petitioner's jury trial may be summarized as follows. Petitioner was charged with tampering with a witness in violation of Fla. Stat. § 914.22(1). App. Exh. A. The State alleged that the charged offense occurred between November 1, 2003, and January 25, 2005. *Id.*

The victim in the instant matter is Alvin Price. App. Exh. B. At trial, Mr. Price testified that in early October 2003, Mr. Price witnessed the murder of his friend, Robert Frazier. *Id.* at 20. Mr. Price was scheduled to testify in the trial of William Crumbie for the murder of Mr. Frazier. *Id.* Mr. Price testified that Petitioner made contact with him on two separate occasions in attempts to influence Mr. Price's testimony in the pending murder case. *Id.* at 21-22 & 31.

Petitioner's first contact with Mr. Price occurred on October 31, 2003,[2] approximately one month after the murder of Mr. Frazier. *Id.* at 42. Mr. Price testified that while he was parked outside of a McDonald's restaurant, Petitioner opened the unlocked driver's side door of Mr. Price's vehicle. *Id.* at 21-22. Petitioner, armed with a gun, called Mr. Price a "snitch," proceeded to threaten Mr. Price, and struck Mr. Price in the left eye with the gun. *Id.* at 22-23. Petitioner continued to strike Mr. Price and told Mr. Price not to testify in the Crumbie murder trial. *Id.* at 27-28. As a result of the encounter, Mr. Price suffered a mild concussion and a swollen face. *Id.* at 26.

---

[2]Mr. Price initially testified that the contact occurred in early November 2003. App. Exh. B. at 42. However, after Mr. Price reviewed hospital records, which indicated that he visited the hospital on November 1, 2003, he recalled that the first instance occurred the night prior, on October 31, 2003. *Id.* at 43. Thereafter, the State moved in open court to amend the information to include October 31, 2003. *Id.* at 44. Petitioner's counsel objected to the amended information. *Id.* at 44, 48 & 51.

Immediately after the encounter, Mr. Price drove approximately fifteen minutes to the home of his friend, Chaquita Wesley. *Id.* at 28. Shortly after arriving, Mr. Price told Ms. Wesley that Petitioner had hit Mr. Price in the face with a gun. *Id.* The following morning, Mr. Price's aunt took him to the hospital. *Id.* at 29. Ms. Wesley's testimony was consistent with Mr. Price's account of the events.

Petitioner's second contact with Mr. Price occurred in January 2005, while Mr. Price was incarcerated in the Gadsden County Jail. *Id.* at 31. During visiting hours, Mr. Price was speaking with a friend, when Petitioner appeared standing behind Mr. Price's friend, apparently waiting to speak to Mr. Price. *Id.* at 34. Thereafter, Petitioner spoke to Mr. Price. *Id.* at 35. During the conversation between Petitioner and Mr. Price, Petitioner told Mr. Price not to testify in the Crumbie murder trial. *Id.* at 35-37. Petitioner also told Mr. Price that if he was released, he was going to "wind up getting killed;" and if Mr. Price was to remain incarcerated, he would have to be put in "protective custody" to avoid getting hurt. *Id.* at 37.

During the exchange between Petitioner and Mr. Price, Kenneth Christian, an inmate in the same cell block as Mr. Price, sat near Mr. Price. *Id.* at 34 & 63. At trial, Mr. Christian confirmed Mr. Price's account of the exchange between Petitioner and Mr. Price. Specifically, Mr. Christian recalled hearing Petitioner tell Mr. Price that if he testified in the Crumbie murder case, he would die. *Id.* at 65.

Petitioner's counsel presented testimony of Jenniene Jackson, who was visiting Mr. Christian at the Gadsden County Jail, when Petitioner confronted Mr. Price. *Id.* at 100-101. In contrast to other testimony, Ms. Jackson testified that although she was not really paying attention to the conversation between Petitioner and Mr. Price, she did

not hear Petitioner threaten Mr. Price, nor did she hear Petitioner say the words "testify" or "testimony." *Id.* at 102 & 104.

During the cross-examination of Mr. Price, the defense became aware for the first time that the contact between Petitioner and Mr. Price occurred on October 31, 2003. *See* note 2. Out of the presence of the jury, the State moved to amend the information to include October 31, 2003. *Id.* at 44.

Petitioner's counsel objected to the amendment stating that he had not "had an opportunity to look at any alibi issues for the 31st, which was Halloween night." *Id.* at 44, 48 & 51. The State argued that amending the information would not cause the defense prejudice, and a minor variation in dates is common. *Id.* at 44. Petitioner's counsel contended that if the stated events "occurred on the 30th, the 31st, or any other day other than what [was] in the charging document, [the defense was] absolutely prejudiced," because the defense had not investigated an alibi for other dates. *Id.* at 45. Further, Petitioner's counsel stated that he had previously filed a demand for a statement of particulars, and as such relied on the dates provided by the State in the information for investigation of an alibi defense. *Id.* at 45-46.

The trial court approved the amendment to the information and stated, "if the defense is in good faith claiming that they would want to investigate some sort of alibi issue on the 31st, Halloween night, then [the court] is fine with that." *Id.* at 46. The court further stated, "it is either going to be a short continuance or it would be a mistrial and proceed after [counsel has] had a chance to explore [an alibi defense]." *Id.* at 47.

A brief discussion off of the record occurred between Petitioner and Petitioner's counsel. *Id.* Thereafter, Petitioner's counsel stated, "[t]he 31st is interesting, [Petitioner]

. . . had a case that [Petitioner's counsel] previously represented [Petitioner] on, and the allegation was that the offense occurred on [October] 31st. If this is true, there may be some problems." *Id.* at 48. Petitioner's counsel continued, stating that he would call his office to retrieve a file for review. *Id.* Furthermore, Petitioner's counsel notified the court that Petitioner did "not want a mistrial," that Petitioner wanted to get the case resolved, and that Petitioner wanted to move forward with the selected jury. *Id.*

Subsequently, Petitioner's counsel asked the trial court "not to amend the charging document . . . and exclude the first element." *Id.* Additionally, Petitioner's counsel requested the court take his request under advisement until after other witnesses testified. *Id.* Petitioner's counsel indicated that after other witnesses testified, he would attempt to contact his office to retrieve the other case file for review. *Id.* at 50. Immediately thereafter, Petitioner's counsel placed information into the record indicating that he and Petitioner had been in constant communication throughout the discussion of the amendment to the information. *Id.* Petitioner indicated he was pleased with what his counsel was doing and how his counsel was progressing with the case. *Id.* Further, Petitioner confirmed that he did not want a mistrial. *Id.*

When the state rested its case, and out of the presence of the jury, Petitioner's counsel moved for judgment of acquittal. *Id.* at 89-90. The trial court denied the motion finding "sufficient evidence for a prima facie case." *Id.* at 91. Subsequently, the trial court inquired of Petitioner whether he was satisfied with his attorney's strategies, cross-examination, and actions. *Id.* Petitioner indicated he was satisfied. *Id.* Furthermore, the trial court conducted a colloquy with Petitioner who testified that he understood he had the right to testify and wished to waive that right. *Id.* at 92.

At the close of trial, Petitioner's counsel placed information into the record stating that he explained to Petitioner "the possibility of requesting a mistrial," and Petitioner did not want a mistrial. *Id.* at 141. Further, upon inquiry by the trial court, Petitioner confirmed he was satisfied with his counsel's representation and that it was Petitioner's personal decision not to testify. *Id.* Petitioner also confirmed that there were no other defense witnesses or "alibi witnesses that [he] asked [his attorney] to investigate that [his attorney] failed or refused to investigate." *Id.* Ultimately, the jury found Petitioner guilty of the charged offense of tampering with a witness. App. Exh. A.

On direct appeal, Petitioner argued that the trial court erred by allowing the State to amend the information during trial. App. Exh. F. On June 29, 2006, Florida's First District Court of Appeal *per curiam affirmed* the decision of the trial court without written opinion. App. Exh. G.

Petitioner filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850, raising four claims of ineffective assistance of counsel. App. Exh. I. at 7-12. First, Petitioner alleged trial counsel was ineffective for failing to secure an alibi witness's affidavit from another one of Petitioner's case files, and as a result Petitioner was misadvised and no motion for mistrial was made. *Id.* at 7-9. Second, Petitioner alleged that trial counsel failed to investigate his prior criminal violations and misadvised him regarding possible sentencing exposure at trial. *Id.* at 9-10. Third, Petitioner alleged that trial counsel was ineffective based on newly discovered evidence as a result of the amendment to the information during trial. *Id.* at 11. Fourth, Petitioner alleged that trial counsel's ineffectiveness rendered involuntarily Petitioner's waiver of his right to testify. *Id.* at 12. The trial court entered a written opinion denying

all claims in Petitioner's motion. *Id.* at 40. Petitioner appealed, and the First District Court of Appeal *per curiam affirmed* without written opinion. App. Exh. J.

Petitioner then filed the instant federal habeas corpus Petition pursuant to 28 U.S.C. § 2254, which Respondent concedes is timely. Doc. 11 & 19. Petitioner raises two claims in his Petition. Doc. 11. First, Petitioner contends that trial counsel rendered constitutionally ineffective assistance for failing to call an alibi witness or failing to present an alibi witness's affidavit. *Id.* Second, Petitioner contends that the State court failed to apply *Strickland v. Washington*, 466 U.S. 668 (1984), when denying Petitioner's motion for postconviction relief. *Id.* Respondent argues that this latter claim is unexhausted. Doc. 19.

## **Section 2254 Exhaustion Requirement**

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)(1),(c). Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law,

the claim is procedurally defaulted. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999). Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered. *Id.* at 1302, 1306. A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010). To state a credible claim of actual innocence, a petitioner must present new reliable evidence that was not presented at trial showing that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

## Section 2254 Standard of Review

For properly exhausted claims, there are limitations on this court's review of state court findings of fact. Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law,

as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). *See also, Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-406 (2000); *Bell v. Cone,* 535 U.S. 685, 694 (2002) (citing *Williams* ). Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Williams,* 529 U.S. at 412-13. "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not require citation of our cases-indeed, it does not even require *awareness* of our cases, so long as

neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8 (2002) (emphasis in original). Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652 (2004).

## Ineffective Assistance of Counsel

Because Petitioner's remaining claims raise the issue of counsel's effectiveness, a review of *Strickland* is appropriate. To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697.

When, as here, the state courts have denied an ineffective assistance of counsel claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is a difficult one. *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 786 (2011). The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1). As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 131 S.Ct. at 785 (quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 786.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*. Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted. *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one." *Id.* at 788. When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Id*. Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

### Petitioner's Claims

### (1) Ineffective Assistance: Alibi Witness

Petitioner contends that Latoya Devane would have testified that Petitioner was at her home from October 31, 2003 at 10:00 p.m., through November 1, 2003, at 1:30 p.m. *See* Doc. 24, Exh. A. Thus, Petitioner contends Ms. Devane would have provided

Petitioner with an alibi for the time during which the State contended the first instance of witness tampering occurred.

The state court reviewed this contention on postconviction review, and found that Petitioner's counsel was not constitutionally ineffective. App. Exh. I at 40. Specifically, the state court found:

> There was no ineffective assistance of counsel by failing to move for a mistrial. Defense counsel's statement of record conclusively demonstrates he requested specific time frames, received them, and suffered no surprise in preparation for the trial. (Tr. 5). After the entire trial, defendant claimed no procedural prejudice. He stated he was satisfied with his lawyer's representation, witnesses called or not, including alibi witnesses, etc. Most importantly, defense counsel had desired additional time to explore an alibi defense, but the defendant himself insisted on going to trial and not requesting a mistrial. (Tr. 140-142). The record conclusively establishes that defendant's claim is frivolous.

*Id.*

"Complaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative." *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980). Petitioner's claims regarding Ms. Devane's potential alibi testimony are wholly speculative and unsupported by anything in the record. The record reflects that counsel did explore alibi issues with Petitioner when the issue regarding the date of the incident arose. Petitioner points to nothing in the record that shows he made counsel aware of Ms. Devane as an alibi witness. Furthermore, as the state court found, Petitioner's counsel "desired additional time to explore an alibi defense, but the defendant himself insisted on going to trial and not requesting a mistrial." App. Exh. B. at 140-142. Additionally, at the close of trial, Petitioner stated

that he was satisfied with his lawyer's representation, and that there were no alibi witnesses or other defense witnesses that Petitioner asked his counsel to investigate that his counsel had failed or refused to investigate. *Id.* at 141. Petitioner's affirmations to the trial court render implausible his postconviction claim that he had a viable alibi defense. On the basis of this record, Petitioner has failed to show that the state court unreasonably determined that counsel's performance was not deficient. Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

### (2) State Court's Denial of Petitioner's Postconviction Motion

Petitioner's second claim is that the state court failed to apply *Strickland* when denying Petitioner's motion for postconviction relief. Petitioner does not dispute that he failed to properly exhaust this claim and that the claim would now be procedurally barred and is therefore foreclosed from federal habeas review. Even if Petitioner had exhausted this claim, it should be denied on the merits because the state court's decision is not in conflict with clearly established federal law or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(1); *Williams*, 529 at 405-406. A state court's decision is not contrary to clearly established federal law merely because the court does not cite federal law. *Early*, 537 U.S. at 8 (holding that a state court does not have to cite to Supreme Court "cases—indeed, [§2254(d)] does not even require *awareness* of [its] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them"); *see also Bell*, 543 U.S. at 455 ("Federal courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation."). Although the state court did not

specifically state that it applied *Strickland*, as set forth in the foregoing discussion the state court's rationale is wholly consistent with a *Strickland* analysis.

## Conclusion

For the foregoing reasons it is respectfully **RECOMMENDED** that the Petition for a writ of habeas corpus, Doc. 11, be **DENIED,** and that a certificate of appealability be **DENIED**.

IN CHAMBERS  this 11th day of August 2011.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**